RAYMOND R. ABRAMSON, Judge *398 Casey Parnell appeals the Pulaski County Circuit Court's order terminating her parental rights to her daughter, K.L. On appeal, Parnell argues that the circuit court erred in finding that it was in K.L.'s best interest to terminate her parental rights. We affirm.
On July 5, 2017, the Arkansas Department of Human Services (DHS) filed an ex parte petition for emergency custody and dependency-neglect of K.L. In the affidavit attached to the petition, DHS stated that it had exercised an emergency hold over K.L. because Parnell had exposed the child to domestic violence, had tested positive for methamphetamine and THC, and was homeless. The affidavit further noted that Parnell had suicidal thoughts. The court entered an order of emergency custody that same day.
On July 14, 2017, the court entered an order finding probable cause for the emergency custody. On September 20, 2017, the court entered an adjudication order. In the order, the court adjudicated K.L. dependent-neglected based on Parnell's mental and emotional instability, housing instability, and illegal drug use. The court further noted that Parnell had been convicted of involuntary manslaughter of her son in Illinois in 2012, and it made an aggravated-circumstances finding. The court set concurrent goals of reunification and relative placement. The court ordered DHS to arrange a home study on K.L.'s maternal uncle, Jacob Parnell, who lived in Illinois.
On November 20, 2017, the court entered a permanency-planning order. The court found that Parnell had made efforts to comply with services. The court noted that Parnell had tested negative on her past ten drug screenings and negative on her alcohol screenings. The court noted that she did not have a driver's license or a car but that a friend and her employer had assisted her with transportation.
On April 3, 2018, Parnell filed consent to termination of her parental rights to K.L. However, on April 4, she filed a notice of withdrawal of her consent.
On April 17, the circuit court entered a permanency-planning order from an April 3 hearing. The court changed the goal of the case to termination of Parnell's parental rights. The court found that Parnell had been untruthful concerning the circumstances surrounding her conviction of involuntary manslaughter. The court further referenced the report from Parnell's August 2017 psychological evaluation. In the report, Dr. Paul Deyoub found that Parnell had borderline personality disorder. The report further stated:
There is and has been a pattern of unstable and intense interpersonal relationships with extremes in relationship chaos. There is identity disturbance, persistent unstable self-image, periodic substance abuse, affective instability, inappropriate and intense anger and constantly changing her situation with marked immaturity. In addition, no matter what her version is, she is a convicted child-abuser and was incarcerated for the death of her newborn baby. When [K.L.] was age three months Ms. Parnell *399 was involved in chaotic relationships and could not care for her child, as she was leaving [K.L.] with a teenage girl and continually fought with her girlfriend.
The court noted that Parnell had been arrested in February 2018 for domestic battery but that she did not report the arrest to DHS and initially denied it at a March meeting. The court again made a finding of aggravated circumstances. The court noted that Parnell had a "fragile mental and emotional state of mind."
On May 4, 2018, DHS filed a petition for termination of Parnell's parental rights. DHS alleged the subsequent-factors ground pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) . DHS further alleged grounds pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(xi)(a)(1) and (3) that Parnell had been found by a court of competent jurisdiction to have committed manslaughter of a juvenile and had subjected the child to aggravated circumstances.
The court held a termination hearing on June 19, 2018. At the beginning of the hearing, DHS introduced into evidence the criminal information from Parnell's involuntary-manslaughter conviction in Illinois dated November 30, 2012. The information stated as follows:
INVOLUNTARY MANSLAUGHTER- That said defendant, while acting in a reckless manner, and without legal justification, unintentionally killed [G.P.], a newborn child, in that she gave birth to [G.P.] in a toilet and then failed to either attempt life-saving measures, or to seek medical help for [G.P.], which resulted in his death by hypoxia.
DHS also introduced Parnell's guilty plea to involuntary manslaughter and the judgment. In the judgment, the court found "that the offense was committed as a result of the use of, abuse of, or addiction to alcohol or a controlled substance."
Dr. Deyoub testified about his psychological evaluation of Parnell. He stated that he had diagnosed her with borderline personality disorder and that due to the disorder, Parnell would have difficulty living a stable life, especially with the demands of a child. He further noted that she had a pervasive pattern of instability in interpersonal relationships, lability of mood and emotion, and frantic overacting in interpersonal relationships. He referenced the reason for K.L.'s removal from Parnell's custody-the altercation with her former girlfriend, her homelessness, and her drug use. Dr. Deyoub testified that the behavior was indicative of borderline personality disorder and that he would be concerned about another unstable relationship.
Angela Brown, an adoption specialist, testified that K.L. is adoptable and that 509 adoption resources are interested in adopting the child. Shirley Knuckles, the DHS caseworker, testified that Parnell had completed all services, including parenting classes, a drug-and-alcohol assessment, drug screenings, and a psychological evaluation. She stated that Parnell had tested negative on her drug screenings. She noted that Parnell had employment, a driver's license, and a stable home and that Parnell had consistently visited the child. Knuckles testified that Parnell had been arrested in February 2018 for third-degree battery and aggravated assault and that Parnell did not inform DHS of the arrest. She explained that when confronted about the arrest, Parnell "made light of" it and stated that the charges would be dismissed. She recommended terminating Parnell's parental rights due to Parnell's previous conviction of involuntary manslaughter, Dr. Deyoub's evaluation, and Parnell's February 2018 arrest.
Following the hearing, on July 18, 2018, the court entered an order terminating Parnell's parental rights based on all three grounds pled in the petition. The court further found it was in K.L.'s best interest to terminate Parnell's parental rights. In making this determination, the court considered Brown's testimony that K.L. is adoptable. The court also considered the potential harm on the health and safety of the child caused by returning her to Parnell's custody. The court found that K.L. would be at a risk of harm due to Parnell's instability and exposure to more domestic abuse. Parnell timely appealed the termination order to this court.
The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. Harbin v. Ark. Dep't of Human Servs. , 2014 Ark. App. 715, 451 S.W.3d 231. On appeal, sufficiency of the evidence is determined by whether the circuit court's finding that the fact was proved by clear and convincing evidence is clearly erroneous. McDaniel v. Ark. Dep't of Human Servs. , 2013 Ark. App. 263. A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that a mistake has been made. Id. In deciding whether a finding of the circuit court is clearly erroneous, we give great deference to the superior opportunity of the circuit court to observe the parties and to judge the credibility of the witnesses. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, 471 S.W.3d 251.
In this case, Parnell challenges only the circuit court's best-interest finding. In determining whether termination is in the best interest of the juvenile, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that would be caused by returning the juvenile to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii) ; Chaffin , 2015 Ark. App. 522, 471 S.W.3d 251. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. Chaffin , 2015 Ark. App. 522, 471 S.W.3d 251. The evidence presented on *401 potential harm must also be viewed in a forward-looking manner and considered in broad terms, but a circuit court is not required to find that actual harm will result or to affirmatively identify a potential harm. Id.
The intent of our termination statute is to provide permanency in minor children's lives in circumstances in which returning the children to the family home is contrary to their health, safety, or welfare, and the evidence demonstrates that the return cannot be accomplished in a reasonable period of time as viewed from the children's perspective. Ark. Code Ann. § 9-27-341(a)(3) ; Chaffin , 2015 Ark. App. 522, 471 S.W.3d 251. The child's need for permanency and stability may override the parent's request for additional time to improve the parent's circumstances. Chaffin , 2015 Ark. App. 522, 471 S.W.3d 251. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for the children. Id. The court may consider the parent's past behavior as an indicator of future behavior. Harbin , 2014 Ark. App. 715, 451 S.W.3d 231.
Affirmed.